### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN

----------------------------------------------------- x

BROCK FREDIN,

     *Plaintiff*,

   - against -

ADAM KLASFELD, JAF COMMUNICATIONS,
INC., d/b/a "THE MESSENGER," ALLISON
GREENFIELD, FRANK RUNYEON,

     *Defendants*.

----------------------------------------------------- x

          3:24-cv-00045-jdp

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BROUGHT BY DEFENDANTS ADAM KLASFELD AND JAF COMMUNICATIONS, INC. D/B/A THE MESSENGER

Pursuant to Federal Rules of Civil Procedure 12(b)(2), (5) and (6), Defendants Adam Klasfeld and JAF Communications, Inc. d/b/a "The Messenger" (*"The Messenger"*) respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff Brock Fredin's claims against them for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

### INTRODUCTION

This lawsuit seeks to punish *The Messenger*, a now-defunct news agency, and its former reporter, Adam Klasfeld, for engaging in protected journalistic activity while covering a matter of intense public interest – the civil fraud trial of former President Trump in New York. Plaintiff Fredin gained a measure of prominence by posting messages on his "@JudicialProtest" social media account accusing Defendant Allison Greenfield, the Principal Law Clerk overseeing the trial, of political bias and misconduct. During the trial, President Trump reposted at least one of these incendiary posts to his millions of followers on Truth Social, and Justice Arthur Engoron

(the presiding judge) issued a gag order prohibiting President Trump from publicly attacking his staff.

Klasfeld covered Trump's civil fraud trial for *The Messenger* and, as part of his reporting, wrote about Fredin's background and his role in the Trump trial.  On December 14, 2023, *The Messenger* published an article by Klasfeld entitled *The Story Behind Trump's Gag Order Involves a Man Under Criminal Investigation for Stalking (Exclusive)* ("*The Messenger* Article").  That same day, Klasfeld posted *The Messenger* Article to his X (formerly Twitter) account.

Fredin has sued *The Messenger* and Klasfeld for defamation, conspiracy to defame, tortious interference, conspiracy to tortiously interfere, and intentional infliction of emotional distress.  The claims against *The Messenger* and Klasfeld should be dismissed on multiple grounds.  First, the Clerk of Court never issued a summons in this case, meaning any attempt at service by Fredin is necessarily inadequate.  Moreover, even if a summons had been issued, Fredin's attempts to serve Klasfeld do not comport with New York law.  Even if *The Messenger* and Klasfeld had been properly served with a valid summons, the Complaint fails to establish personal jurisdiction over them.  Regardless of whether this Court has personal jurisdiction, however, Fredin fails to state a claim for defamation or conspiracy to defame because *The Messenger* Article: (A) was a fair and accurate report of judicial proceedings, (B) was published without the requisite level of fault – *i.e.*, actual malice, and (C) does not plausibly allege an entitlement to relief.  Finally, Fredin's tag-along tortious interference and intentional infliction of emotional distress claims fail because they are duplicative of his meritless defamation claim.

For all these reasons, and as set forth in greater detail below, the Complaint should be dismissed with prejudice as to *The Messenger* and Mr. Klasfeld.

**FACTUAL BACKGROUND**

**A.    Plaintiff Fredin**

Plaintiff Fredin purports to be a resident of Hudson, Wisconsin, and the operator of the "Twitter/X account @JudicialProtest." Compl.(Dkt. 1) ¶¶ 4, 9. Starting in "September 2023, Plaintiff began posting through @JudicialProtest about observed corruption in the *People v. Trump et al.* civil trial against former President Trump accusing him of business fraud" – including posts stating that, "[w]hile serving as a Court Attorney, Ms. Greenfield made political donations in excess of ethical limits imposed by New York law." *Id*. ¶¶ 10, 14(a). "On October 3, 2023, …President Trump 'retruthed' a tweet made by Plaintiff on his @JudicialProtest account." *Id*. ¶ 19. "As a result of President Trump's post, Justice Engoron imposed a (unconstitutional) gag order on Trump barring him from speaking out publicly against Ms. Greenfield and his court staff. The gag order has been the subject of much political debate, many legal appeals and legal actions." *Id*. ¶ 20.

**B.    *The Messenger* Article and Klasfeld Tweet**

At all times relevant to the Complaint, Defendant Klasfeld was a reporter for *The Messenger* residing in New York. Declaration of Adam Klasfeld dated May 10, 2024 ("Klasfeld Decl."), ¶ 2, 3.[1] Klasfeld covered the Trump civil fraud trial in New York, which he did while located in New York and without ever travelling to Wisconsin. *Id.* ¶ 6 . After the New York Court's gag order stemming from one of Fredin's social media posts, *The Messenger* published an article written by Klasfeld focusing on Fredin. Compl. ¶ 27, Ex. A (Dkt. -1). The article reported on Fredin's "history of civil and criminal litigation over his harassment of women." *Id.*

---

[1] The Court is permitted to look beyond the allegations of the complaint and review evidence that has been submitted when reviewing a motion to dismiss for lack of personal jurisdiction. *See Cont'l Ins. Co. v. Garrison*, 17 F. Supp. 2d 837, 838 (E.D. Wis. 1998).

at 3.  The three women the article highlights all "won harassment restraining orders" against

Fredin, and Klasfeld made clear in the article that he was basing his reporting on "court filings."

*Id.* at 7.  In addition to the harassment litigation, *The Messenger* Article reported that Fredin had

filed "at least a dozen retaliatory lawsuits," which led U.S. District Court Judge Susan Richard

Nelson to find Fredin was a "malicious and vexatious litigant."  *Id.* at 6.

Beyond Fredin's involvement in civil and criminal litigation, *The Messenger* Article

reported on Fredin's surprise role in the Trump civil fraud trial following the former President's

repost of one of Fredin's social media posts.  Following the recognition from Trump, Fredin

noted in an appellate filing that his sentiments had "received endorsement from President

Trump."  *Id.* at 6.  Finally, in a section of the article focusing on the scope of the gag order

leveled against Mr. Trump and his legal team in the civil fraud trial, Klasfeld reported that Mr.

Trump's attorneys cited a *Breitbart* article, for which Fredin was the primary source, in their oral

argument.  *Id.* at 8-9.

### C.    Procedural History and Complaint

On December 15, 2023, Fredin filed a summons with notice against Greenfield, *The*

*Messenger,* and Klasfeld in the Supreme Court of New York, New York County.  *Fredin v.*

*Klasfeld*, 162213/2023 (Sup. Ct. N.Y. Cnty.), Dkt. 1.  On January 19, 2024, Fredin voluntarily

withdrew his suit before any of the defendants appeared, presumably to avoid the mandatory

attorneys' fees shifting provision of New York's anti-SLAPP law.  *See id.* Dkt. 4.

Fredin filed the Complaint in this action on January 22, 2024.  Dkt. 1.  In the Complaint,

Fredin does not allege that any statements in *The Messenger* Article are false.  Instead, Fredin

alleges the article "insinuates" that Fredin "is somehow *criminally harassing* Ms. Greenfield."

*Id.* ¶ 37 (emphasis in the original).  Fredin further alleges that the *The Messenger* Article "asserts

that Plaintiff [*sic*] engaged in some kind of conspiracy with President Trump and acts as his

agent or 'proxy' to post information about Ms. Greenfield." *Id.* ¶ 40.  Fredin alleges that this

purported assertion is false.  *Id.* ¶ 41.  Based on these allegations, Fredin brings the following

claims against Klasfeld and *The Messenger*: defamation, conspiracy to defame, tortious

interference, conspiracy to tortiously interfere, and intentional infliction of emotional distress.

Compl. ¶¶ 42-81.  These claims should be dismissed because Fredin has failed to establish

personal jurisdiction or a valid cause of action.

There are multiple documents missing from the docket that are necessary to determine

the Court's jurisdiction in this matter.  First, the clerk never issued a summons in this matter; no

summons appears on the docket.  Second,  Fredin never filed a Rule 7.1 disclosure as required by

the Federal Rules.  Fed. R. Civ. P. 7.1.  Without this disclosure, the Court cannot assess whether

it has diversity jurisdiction.  *See id.*  Moreover, there is reason to believe Fredin is not a

Wisconsin resident.  On April 18, 2024, Fredin called into the St. Croix County Circuit Court in

Wisconsin regarding a criminal matter in which he is a defendant.  *State of Wisconsin v. Brock*

*William Fredin*, Case No. 2024CF209.[2]  In his telephone message, Fredin sought to have his

warrant quashed because "he is not a resident of WI or MN."  *Id.*  The Court can take judicial

notice of the docket in *State v. Fredin* as a public court record.  *Fin. Fiduciaries, LLC v. Gannett*

*Co.*, 2020 WL 12582894, at *2 (W.D. Wis. June 1, 2020).

On April 12, 2024, Fredin filed an affidavit of service on Klasfeld.  Dkt. 15.  Per the

affidavit, Fredin attempted service by mailing "a copy of the complaint and summons via the

United States Postal Service to Adam Klasfeld's last known address at 3070 34th St., Apt 3E,

Astoria, NY 11103, situated in Queens County, New York."  *Id.* at 2.  Klasfeld did not live at

that address at the time and had not roughly a year.  Klasfeld Decl., ¶ 3.  Fredin also placed what

---

[2] The online docket for this case can be found at
https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF000209&countyNo=55&index=0&mode=details.

he referred to as "the summons" in *The National Herald*, which he attests is a newspaper circulating in "Queens County, Manhattan, Brooklyn, and other nearby areas."  Dkt. 15 at 2.

## ARGUMENT

### I.     THERE IS NO PERSONAL JURISDICTION OVER KLASFELD OR *THE MESSENGER* AND NEITHER HAVE BEEN PROPERLY SERVED.

The Complaint should be dismissed as to *The Messenger* and Klasfeld because Fredin has failed to establish that this Court has personal jurisdiction over them.  *The Messenger* and Klasfeld incorporate by reference the legal standards set forth in the motion to dismiss filed by Defendant Greenfield on March 12, 2024.  *See* Dkt. 9, at 7-15.  For the reasons set forth below, Fredin cannot satisfy either of those standards with respect to *The Messenger* or Klasfeld and, therefore, there is no personal jurisdiction over either *The Messenger* or Klasfeld.

### A.     Fredin Cannot Satisfy the Wisconsin Long-Arm Statute.

The Wisconsin Long-Arm Statute permits general or specific jurisdiction, but Fredin cannot establish either over *The Messenger* or Klasfeld.  Klasfeld lacks the "continuous and systematic" contacts with Wisconsin needed to meet the stringent standard for general jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919-20 (2011); *Faigin v. James E. Kelly Doubleday Dell Publ. Grp.*, 1995 U.S. Dist. LEXIS 23157, at *4-7 (E.D. Wis. Feb. 6, 1995).  Klasfeld is a New York-based journalist who covers the legal system for news organizations in New York.  Klasfeld Decl. ¶¶ 1-7.  He does not report on local news stories in Wisconsin nor does he have any meaningful connection to the state, let alone the "continuous and systematic contacts with the State of Wisconsin" needed to justify general purpose jurisdiction.  *Faigin*, 1995 U.S. Dist. LEXIS 23157 at *7; Klasfeld Decl. ¶ 4.

*The Messenger* similarly lacked continuous and systematic contacts with Wisconsin.  *The Messenger* shut down in January 2024.  Klasfeld Decl. ¶ 5.  Prior to the shutdown, the news

organization, which operated for eight months, was headquartered in West Palm Beach, Florida and had offices in New York, New York, Los Angeles, California, and Washington, D.C. *Id.* ¶ 5. *The Messenger* did not focus its coverage on local news stories in Wisconsin. *Id.* ¶ 4. Thus, for the same reasons as Klasfeld, the Court does not have general personal jurisdiction over *The Messenger*.

There is also no specific long-arm jurisdiction over Klasfeld or *The Messenger*. The Complaint does not plead any jurisdictional facts or specify which subsection of the Wisconsin Long-Arm Statute it seeks to rely upon, and there is no viable path for establishing jurisdiction over Klasfeld and *The Messenger*. Under Wis. Stat. § 801.05(3), personal jurisdiction may be established over an out-of-state defendant who injured the plaintiff by "an act or omission" that occurred within Wisconsin. But this provision is inapplicable to Klasfeld and *The Messenger* because *The Messenger* Article and Klasfeld's related tweet were researched, written, and published in New York, not Wisconsin. Klasfeld Decl. ¶ 7. Moreover, Wis. Stat. § 801.05(4)— which permits jurisdiction over a defendant whose acts outside Wisconsin injured a plaintiff within Wisconsin—is equally inapplicable. To establish personal jurisdiction under this subsection of the long-arm statute, Fredin would have to show either that "[s]olicitation or service activities were carried on within this state by or on behalf of defendant" or that "[p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." Wis. Stat. § 801.05(4). Again, neither Klasfeld nor *The Messenger* ever conducted business in Wisconsin. Klasfeld Decl. ¶¶ 1-7. The fact that *The Messenger* Article and Klafeld's tweet happened to be accessible in Wisconsin because both were available nationwide is far too tenuous a connection to justify personal jurisdiction under the long-arm statute. *See Advanced Tactical Ordnance Sys., LLC v.*

*Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), as corrected (May 12, 2014) ("[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'").

> **B.    Fredin Cannot Satisfy Due Process.**

Even if Fredin could satisfy the Wisconsin Long-Arm Statute, there is still no personal jurisdiction because haling Klasfeld and *The Messenger* into a court in Wisconsin would violate due process.  First, there is nothing to support a finding that *The Messenger* or Klasfeld "purposefully availed" themselves of "the privilege of conducting business" in Wisconsin or "purposefully directed [their] activities at" the state.  *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).  To the contrary, *The Messenger* Article aimed to provide context about a civil trial in New York.  *See, generally,* Dkt. 1-1.  Moreover, while *The Messenger* Article identifies Fredin as a Wisconsin man and notes that Fredin had filed lawsuits in Wisconsin, the bulk of the litigation and court records cited in the *The Messenger* Article stem from court cases in Minnesota.  *See, generally, id.*  Perhaps most importantly, Klasfeld was physically present in New York when he reported on and wrote the article and when he posted the tweet.  Klasfeld Decl. ¶ 7.

Next, Fredin's alleged injury has not "arisen out of the defendant[s'] forum-related activities" because the activities of Klasfeld and *The Messenger* have nothing to do with this forum.  *Lexington*, 938 F.3d at 878; *see also Faigin*, 1995 U.S. Dist. LEXIS 23157, *11-12 (dismissing for lack of personal jurisdiction where statements at issue were "entirely composed and edited in the State of New York" and "Wisconsin was a minor market" for the work at issue).  Finally, extending personal jurisdiction over Klasfeld and *The Messenger* would contradict traditional notions of fair play and substantial justice.  The unfairness of forcing

Klasfeld and *The Messenger* into Wisconsin court is underscored by the fact that Fredin injected himself into the New York fraud trial of former President Trump and then sued Defendants in New York State Court before voluntarily dismissing his case to avoid application of New York's anti-SLAPP statute.  *See Fredin v. Klasfeld*, 162213/2023 (Sup. Ct. N.Y. Cnty.).

In short, Fredin initiated the chain of events that led to this lawsuit by targeting New York with his tweets about the Trump civil fraud trial taking place there.  Traditional notions of fair play and substantial justice do not permit him to retreat to Wisconsin because he perceives its laws to be more favorable to libel plaintiffs.  Nor does the fact that Fredin purportedly resides in Wisconsin subject Klasfeld and *The Messenger* to personal jurisdiction in this state.  Accordingly, as there is no personal jurisdiction over Klasfeld and *The Messenger,* the claims against both should be dismissed.

### C.      Fredin Failed to Properly Serve *The Messenger* and Klasfeld.

Next, the Clerk of Court has not issued a summons in this matter, and, thus, Fredin has not properly served any Defendant.

"A district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process," and "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint."  *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008).  Deficiencies under Rule 12(b)(4) include the failure to obtain a court seal or signature on the summons.  *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1400 (7th Cir. 1993); *Knox v. Pendergast*, 2007 WL 1413681, at *3 (E.D. Wis. May 11, 2007).

Neither *The Messenger* nor Klasfeld were served with a summons meeting the requirements of Federal Rule of Civil Procedure 4.  The Court's docket supports a finding that the summons purportedly served by Fredin fails to comply with Rule 4.  As Fredin did not

request the clerk issue a summons, no summons was issued or filed in this case.  Without a valid

summons, Fredin could not have properly served *The Messenger*, Klasfeld, or any other

Defendant in the case.  Fed. R. Civ. P. 4 (c)(1) ("A summons must be served with a copy of the

complaint.").[3]

Even if the clerk had issued a valid summons, service on Defendant Klasfeld was

improper.  According to the Plaintiff's affidavit of service, Plaintiff mailed a copy of the

complaint and an informal summons to what Plaintiff alleges was Mr. Klasfeld's last known

address in New York.  Dkt. 15.  Plaintiff's affidavit of service also states that he subsequently

placed the informal summons in a local newspaper.  (*Id.*).  However, pursuant to New York law,

service of process on a natural person must be made by one of the means permitted by N.Y.

C.P.L.R. § 308, such as personally delivering the summons and complaint to the defendant or by

delivering the paper to a person of "suitable age and discretion" at the home of the defendant and

then subsequently mailing the papers to the defendant's last known address.  N.Y. C.P.L.R.

§ 308(1) & (2).  Moreover, service by publication is not a permissible means of service under

New York Law unless it has been directed by order of a judge.  N.Y. C.P.L.R. § 308(5) & 316.

Plaintiff has not submitted any such authorizing order to this Court.  Therefore, even if an

effective summons had been issued by the clerk, simply mailing copies of the summons and

complaint to Mr. Klasfeld's last known address and publishing the summons in a local

newspaper is insufficient to effectuate service of process.

As neither Klasfeld nor *The Messenger* have been properly served with the summons and

complaint, the Court does not have personal jurisdiction over them.

---

[3] On April 30, 2024, plaintiff filed a Motion to Correct Service Deficiencies.  (See Dkt. 34.).  For the reasons stated herein, Defendants object to that motion as both untimely and futile.

## II.     FREDIN FAILS TO STATE A CLAIM FOR DEFAMATION OR CONSPIRACY TO DEFAME.

In addition to the procedural deficiencies that warrant dismissal of Fredin's claims against Klasfeld and *The Messenger*, Fredin's defamation claims against Klasfeld and *The Messenger* also fail on the merits for multiple reasons.  First, *The Messenger* Article was a fair and accurate report of judicial proceedings.  Second, Fredin's complaint fails to plead sufficient facts to plausibly establish that *The Messenger* Article was published with the requisite level of fault – *i.e.*, actual malice.  Third, *The Messenger* Article does not credibly raise the implications Fredin alleges it does.  Moreover, Fredin's tag-along conspiracy to defame claim fails both because Fredin has failed to state a claim for defamation and because he has not plausibly alleged the elements of a conspiracy.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts assess defamation lawsuits "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 640-41 (S.D.N.Y. 1995) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).  This is because "[t]he threat of being put

to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). *See also Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 538-39 (1997). Accordingly, courts routinely dispose of libel cases on a motion to dismiss where the threshold issues can be resolved as a matter of law.

To decide whether Fredin states a valid defamation claim, the Court must first decide what state's laws govern the Court's analysis. Under Wisconsin's choice of law analysis, New York law governs the substantive claims against Klasfeld and *The Messenger*. In Wisconsin, "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *Fin. Fiduciaries v. Gannett Co.*, 46 F.4th 654, 661 n.3 (7th Cir. 2022) (citation omitted).[4] Here, the contacts with New York are clearly more significant than the contacts with Wisconsin—Klasfeld was reporting from New York for a publication's New York office and was covering a major civil fraud trial in New York State Court concerning Trump's New York real estate. The only contact between this action and the State of Wisconsin is that Fredin purports to live here (though that is dubious considering his filings in other cases). But Wisconsin's interest in applying its law is diminished by the fact that this lawsuit arose from Fredin's online commentary about a lawsuit that took place in New York.

At the same time, pursuant to the *Erie* doctrine, this Court may apply the procedural law of Wisconsin in determining whether Fredin has satisfied this state's statutory prerequisite to pursue a defamation claim against *The Messenger* and Klasfeld. Accordingly, this Court should

---

[4] Courts in Wisconsin also assess five choice of law factors: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Cowley v. Abbott Labs*, 476 F.Supp. 2d 1053, 1057 (W.D. Wis. 2007). Application of these factors "as a whole" make clear that New York's contacts are of "greater significance" than Wisconsin's, "which leads to the conclusion that [New York] law governs." *Id*. at 1059.

dismiss Fredin's defamation claims because he failed to comply with Wisconsin's procedural prerequisites to defamation claims stemming from news articles.  In Wisconsin, a defamation plaintiff is required to first give a news agency responsible for the allegedly libelous publication an opportunity to correct the offending publication through proper notice of the libel.  Wis. Stat. § 895.05; *see Driessen v. Vabalaitus*, 2023 WL 2954460, at *2 (W.D. Wis. Apr. 14, 2023). Failure to comply with the retraction demand statute requires dismissal with prejudice. *DeBraska v. Quad Graphics, Inc.*, 2009 WI App 23, ¶ 23, 316 Wis. 2d 386, 763 N.W.2d 219. As satisfaction of Wis. Stat. § 895.05(2) is a procedural prerequisite to suit, *Barlass v. City of Janesville*, 2011 WL 13187131, at *16 (W.D. Wis. Nov. 28, 2011), *aff'd sub nom. Barlass v. City of Janesville, Wis.*, 483 F. App'x 261 (7th Cir. 2012), this Court can apply it to dismiss Fredin's defamation claims pursuant to the *Erie* doctrine.  *See Lins v. Blau*, 220 Wis. 2d 855, 862, 584 N.W.2d 183 (Ct. App. 1998) (holding a statute is "procedural" if "it sets out conditions precedent to the right to bring a suit.").

Furthermore, under New York law, the elements of a defamation claim are: "(1) a defamatory statement of fact about the plaintiff; (2) publication to a third party; (3) fault by the defendant; (4) falsity of the statement; and (5) special damages or per se actionability." *Oakley v. Dolan*, 833 F. App'x 896, 899 (2d Cir. 2020) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).  *See also Fin. Fiduciaries*, 46 F.4th at 665 (identifying substantially identical elements of a defamation claim under Wisconsin law).  Here, Fredin has failed to make the factual allegations needed to establish multiple necessary elements of his cause of action against Klasfeld and *The Messenger*, further supporting a dismissal of those claims.

A. *The Messenger* **Article is a Fair and Accurate Report of Judicial Proceedings.**

*The Messenger* Article fairly and accurately reported on several judicial proceedings. Fredin cannot contest this. Therefore, the article, and Klasfeld's republication on X, are privileged under New York law.

Pursuant to Section 74 of the New York Civil Rights Law, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74 (McKinney). "New York courts adopt a 'liberal' interpretation of the 'fair and true report' standard of ... § 74 so as to provide broad protection to news accounts of judicial ... proceedings.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) (internal citation omitted). The report need only be substantially accurate: minor inaccuracies do not defeat the privilege. *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005). Finally, Section 74 extends to reports of judicial proceedings that are mixed with commentary or opinion. *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 329 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

*The Messenger* Article reports exclusively on the Trump Civil Trial in New York and civil and criminal litigation involving Fredin in Minnesota and Wisconsin. Nowhere in the Complaint does Fredin allege any of the details in *The Messenger* Article are inaccurate, nor does he allege that the article unfairly reported on those judicial proceedings. *See, generally,* Compl. To the extent, as Fredin alleges, *The Messenger* Article includes commentary comparing allegations raised against Fredin in other litigation to his actions in the Trump Civil litigation, such commentary does not negate the true and fair report privilege. *See Ctr. For Med. Progress*,

14

551 F. Supp. 3d at 329 (citing *Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers*, 260 N.Y. 106, 119, 183 N.E. 193 (1932) (holding articles summarizing and commenting on hotel's failure to pay water bills were privileged as fair and accurate reports of government proceedings and documents and finding "[f]acts do not cease to be facts because they are mixed with the fair and expectant comment of the story teller, who adds to the recital a little touch by his piquant pen.").

In sum, as *The Messenger* Article is a fair and accurate report of judicial proceedings, neither it nor Klasfeld's republication on X can serve as the basis for a civil action under New York law.[5]

**B.    The Complaint Fails to Plead Actual Malice.**

The claims against Klasfeld and *The Messenger* should also be dismissed because Fredin has not and cannot plead the necessary degree of fault, which is actual malice.  As a threshold matter, under the applicable law, the actual malice standard applies to Fredin for two reasons: *The Messenger* Article is a publication on a matter of public interest and Fredin is a limited purpose public figure.

Under substantive provisions of New York's recently amended anti-SLAPP statute, libel plaintiffs must plead and ultimately prove actual malice whenever the underlying publication addresses a matter of "public interest."  *See Sweigert v. Goodman*, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021) ("As a federal court sitting in diversity, this Court must apply Civil Rights Law § 76-a 'because it is a substantive, rather than a procedural, provision'") (quoting *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020); *Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (holding that Section 76-a applies in federal courts).  Courts "broadly construe the notion of 'public interest'" when deciding whether to apply the actual

---

[5] To the extent the Court found that Wisconsin law governed this dispute, the Court should reach the same result pursuant to Wis. Stat. § 895.05(1).

malice standard.  *Zeitlin v. Cohan*, 220 A.D.3d 631, 632 (1st Dep't 2023).  Here, the allegedly

defamatory article derived from Klasfeld's reporting on the civil fraud trial of former President

Trump—one of the most closely followed civil trials in history—which clearly triggers

application of the actual malice standard under New York law.

Fredin is also required to establish actual malice because he is a limited purpose public

figure under both New York and Wisconsin law.  *See, e.g.*, *Biro v. Condé Nast*, 807 F.3d 541,

546 (2d Cir. 2015) ("[A] public-figure plaintiff must plead 'plausible grounds' to infer actual

malice …."); *Wiegel v. Capital Times Co.*, 145 Wis. 2d 71, 81-82 (Ct. App. 1988); *Curtis Publ'g*

*Co. v. Butts*, 388 U.S. 130, 154-55 (1967).  "Whether a plaintiff is a public figure is a question of

law for the court."  *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).  And

the test for determining whether Fredin is a limited purpose public figure asks whether he has:

> (1) successfully invited public attention to his views in an effort to influence
> others prior to the incident that is the subject of litigation; (2) voluntarily injected
> himself into a public controversy related to the subject of the litigation; (3)
> assumed a position of prominence in the public controversy; and (4) maintained
> regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).[6]

Fredin satisfied each of these elements, and attained limited public figure status, through

his operation of the @JudicialProtest social media account.  He voluntarily injected himself into

a public controversy (*i.e.*, the Trump civil fraud trial) and invited public attention to his views by

posting a slew of videos and tweets calling the integrity of Judge Engoron and Greenfield, his

Principal Law Clerk, into question.  Compl. (Dkt. 1) ¶¶ 9-18.  He attained a position of

---

[6] *See also Wiegel*, 145 Wis. 2d at 83 (a defamation plaintiff qualifies as a limited purpose public figure if: (1) there is a public controversy; (2) the plaintiff played a role in the controversy that is more than "trivial or tangential;" and (3) the alleged defamation is "germane to the plaintiff's participation in the controversy"); *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 677-78 (Ct. App. 1995) (courts "look at the nature of the plaintiff's involvement in the public controversy to see whether the plaintiff has injected himself or herself into the controversy so as to influence the resolution of the issues involved").

prominence in this controversy when Trump reposted one of his tweets to the millions of followers of his Truth Social account, which led Judge Engoron to impose a gag order against Trump. *Id*. ¶¶ 19-20. And he maintains regular and continuing access to the media through his @JudicialProtest account. *Id*. ¶ 21 (noting that Fredin "has continued to uncover additional misconduct by Justice Engoron, his family members and Ms. Greenfield, which he has spoken out against through @JudicialProtest"). As a limited purpose public figure, Fredin must establish that *The Messenger* Article was published with actual malice.

Actual malice is a deliberately high standard of fault that requires Plaintiff to show that Klasfeld or *The Messenger* either knowingly published a false statement or made such a publication with reckless disregard for the truth – *i.e.*, "serious doubt[s] as to the truth of [the] statement" at the time of publication. *N.Y. Times*, 376 U.S. at 279-80, 285-86; *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666-67 (1989); *Freeman v. Johnston*, 84 N.Y.2d 52, 57, 637 N.E.2d 268 (1994). This is a subjective test that turns on "what the defendant actually believed and not … 'whether a reasonably prudent man would have published, or would have investigated before publishing.'" *Goldblatt v. Seaman*, 225 A.D.2d 585, 586 (2d Dep't 1996) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Thus, even an "extreme departure" from responsible journalism does not qualify as actual malice. *Harte-Hanks*, 491 U.S. at 665. Rather, in order to allege actual malice, Fredin must plead "'plausible grounds' to infer actual malice by alleging 'enough fact[]s to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro*, 807 F.3d at 546 (quoting *Twombly*, 550 U.S. at 556).[7]

---

[7] *See also McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (dismissing defamation complaint where plaintiff's "charge [of actual malice] is pure speculation, supported not by facts but by only conclusory statements"); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717, at *11 (S.D.N.Y. Sept. 29, 2018) (holding that "conclusory description" of alleged actual malice "is plainly inadequate").

Fredin's defamation claim against Klasfeld and *The Messenger* fails for lack of actual malice.  The Complaint does not mention actual malice nor does it plead any facts from which a plausible allegation of actual malice might be drawn against Klasfeld or *The Messenger*—which is grounds for dismissal without more.  *The Messenger* Article also disproves actual malice.  The article makes clear, repeatedly, that its reporting is based on the contents of court filings.  *See, e.g.,* Dkt. 1-1 at 7.  As mentioned above, Fredin does not dispute that any of the specific statements in the article are true.  Even if he did, the true and fair report privilege exists so journalists can fairly report on judicial proceedings without fear of liability stemming out of the contents of court filings.[8]

In sum, Fredin must plead actual malice and ultimately prove it by clear and convincing evidence in order to proceed with this lawsuit.  His failure to do so requires immediate dismissal.

## C.   *The Messenger* Article Does Not Credibly Imply that Fredin Engaged in Criminal Harassment of Greenfield Nor That Fredin Engaged in a Conspiracy with Trump.

While Fredin does not allege that any of the statements in *The Messenger* Article are false, he does allege that the article leaves readers with two false and defamatory implications: (1) Fredin criminally harassed Defendant Greenfield; and (2) Fredin engaged in a conspiracy with Trump or acted as his proxy.  Under an objective reading, *The Messenger* Article makes no such implications.

Under New York law, a defamation claim need not necessarily stem from false statements but can arise out of otherwise truthful statements that create "false suggestions, impressions, and implications."  *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 381, 649

---

[8] Even assuming *arguendo* that Wisconsin substantive law applies and Fredin is deemed to be a private figure, the Complaint should still be dismissed for failure to plead the necessary level of fault – which would be negligence. *See, e.g.*, *Denny v. Mertz*, 106 Wis. 2d 636, 656, 318 N.W.2d 141 (1982).

N.E.2d 825 (1995).  However, a court cannot strain to find the alleged defamatory innuendo and, instead, must consider the publication in context and give the language a natural reading.  *Weiner v. Doubleday & Co.*, 74 N.Y.2d 586, 592, 549 N.E.2d 453 (1989).  Additionally, the published language must be reasonably read to suggest the author intended or endorsed the alleged implication.  *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28 (1st Dep't), 38 (2014).  Determining the author's intent is an "objective inquiry," in which "the Court asks whether the statement itself 'by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference.'"  *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 150 (S.D.N.Y. 2022) (internal citation omitted).

First, Fredin alleges *The Messenger* Article implies he criminally harassed Defendant Greenfield.  The article does no such thing.  Even if it did, such an implication would be true.  When read in context, *The Messenger* Article provides background on a man that had taken a surprising star role in the Trump Civil Fraud Trial, which was being closely followed around the country.  While the article does connect Fredin's actions underlying previous civil and criminal matters to his treatment of Defendant Greenfield, the article would not leave a reader with the impression that Fredin had criminally harassed Greenfield.  *The Messenger* Article does not lay out the elements of criminal harassment in New York or Wisconsin.  *See, generally,* Dkt. 1-1.  Moreover, while the article references Fredin's criminal history, it argues his behavior in the Trump Civil Trial echoes allegations made against him in civil harassment litigation in which several women won restraining orders against him.  Dkt. 1-1 at 7.  This is simply not enough to satisfy the objective standard that Klasfeld and *The Messenger* implied Fredin was engaging in criminal harassment of Greenfield and endorsed that implication.  *See Haart v. Scaglia,* 78 Misc.

3d 1238(A) at *10-11, 187 N.Y.S.3d 923 (Sup. Ct. N.Y. Cnty. 2023) (finding press release's statement that well-known criminal attorney would conduct investigation into whether Plaintiff violated criminal laws and make a referral to prosecutors in the event he found evidence substantiating violations failed the "rigorous test" used by court to determine if press release implied Plaintiff engaged in criminal conduct).

For an implication arising out of a publication to be actionable defamation, it must be false. *Armstrong*, 85 N.Y.2d at 381. Under Section 240.25 of New York's Penal Code, a person that "engag[es] in a course of conduct or [] repeatedly commit[s] acts which places [someone] in reasonable fear of physical injury" is guilty of Harassment in the first degree, a class B misdemeanor. Fredin does not dispute the following facts in *The Messenger* Article: Fredin publicly attacked the credibility of Defendant Greenfield, the principal clerk of the Judge presiding over Trump's civil trial; Trump reposted that attack to his millions of followers; Fredin filed a bar complaint against Greenfield, which was covered by the conservative website *Breitbart*; Fredin emailed the chambers in which Greenfield worked, copying state regulators, to complain about Greenfield; Fredin has publicly shared the URLs for a website dedicated to attacking Greenfield, and Fredin's bar complaint against Greenfield is posted to that website. Dkt. 1-1. Fredin's repeated attacks on Greenfield elevated her to a level of infamy among Trump and his supporters sufficient to create a reasonable fear for her safety. Thus, to the extent *The Messenger* Article implies Fredin is criminally harassing Greenfield—it does not—said implication would be true.

Second, Fredin alleges *The Messenger* Article implies that Fredin "engaged in some kind of conspiracy with President Trump and acts as his agent or 'proxy' to post information about Ms. Greenfield." The existence of this alleged implication is even more easily dispelled. *The*

*Messenger* Article makes clear that Klasfeld "found no evidence that Trump's attorneys or surrogates communicated with Fredin or coordinated his attacks on the judge's clerk while the gag orders were in place." Dkt. 1-1 at 4. The article, thus, clearly does not raise the implication Fredin alleges.

As *The Messenger* Article does not plausibly raise the implications alleged by Fredin, the Court must dismiss the defamation claims against Klasfeld and *The Messenger*.

### D.      Fredin Fails to State a Claim for Conspiracy to Defame.

Fredin's conspiracy to defame claim also fails for multiple reasons. First, New York does not recognize conspiracy to defame as a separately cognizable cause of action. *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992); *Pravda v. Cnty. of Saratoga*, 224 A.D.2d 764, 766 (3d Dep't 1996). Second, dismissal of Fredin's defamation claim requires dismissal of his dependent conspiracy to defame claim. *Barns & Farms Realty, LLC v. Novelli*, 82 A.D.3d 689, 691 (2d Dep't 2011) ("[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort.").[9]

Finally, "[a]t the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made'…. A complaint alleging merely parallel conduct is not sustainable." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Fredin does not make any factual allegations of an agreement involving Klasfeld and does not even assert bare conspiracy allegations against *The Messenger*. Fredin alleges, *upon information and belief*, that Greenfield contacted Klasfeld requesting he write an article on Fredin. Compl. (Dkt. 1) ¶

---

[9] *See also Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977) ("It is the established law of this state that there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone.") (internal citations omitted).

28.  Later, Fredin alleges, *again on belief*, that Defendants Klasfeld, Greenfield, and Runyeon, reached out to his employer.  Compl. (Dkt. 1) ¶ 33.  All that remains are bare legal allegations of conspiracy.  Even assuming the truth of this bare-bones allegation for the purpose of this motion to dismiss, it comes nowhere near alleging an actionable conspiracy involving *The Messenger* and Klasfeld.

## III.  FREDIN FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE OR CONSPIRACY TO TORTIOUSLY INTERFERE

Fredin's tortious interference claim also fails for multiple reasons.  First, under New York law, tortious interference claims "premised on the same set of facts as … defamation claim[s]" are deemed duplicative and routinely dismissed at the pleading stage.  *Goldman v. Barrett*, 2017 WL 4334011, at *8 (S.D.N.Y. July 25, 2017).  *See also Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014) (dismissing tortious interference with contract claim as duplicative of defamation claim) (applying New York law).  "Without such a rule, virtually any defective defamation claim, such as the one in this case, could be revived by pleading it as one for intentional infliction of emotional distress [or other torts]; thus, circumventing the restrictions, including those imposed by the Constitution, on defamation claims."  *Dworkin v. Hustler Mag., Inc.*, 668 F. Supp. 1408, 1420 (C.D. Cal. 1987) (applying New York law), *aff'd*, 867 F.2d 1188 (9th Cir. 1989).  Here, since the only claims against *The Messenger* and Klasfeld arise from the publication of *The Messenger* Article, Fredin's tortious interference claim is duplicative and must be dismissed.

The tortious interference claim against *The Messenger* and Klasfeld also fails because Fredin has not pleaded the factual allegations needed to establish that claim.  "In a contract interference case ... the plaintiff must show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a

breach, and damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 867

N.E.2d 381(2007).  Similarly, to plead tortious interference with prospective business relations,

Fredin must allege "that the conduct by defendant that allegedly interfered with plaintiff's

prospects either was undertaken for the sole purpose of harming plaintiff, or that such conduct

was wrongful or improper independent of the interference allegedly caused thereby." *Jacobs v.

Continuum Health Partners, Inc.*, 7 A.D.3d 312, 313 (1st Dep't 2004).  Here, Fredin fails to

plead *any* facts capable of supporting his claims against any Defendants and the Court should

disregard his bare recitation of the elements of a tortious interference claim.  *See* Compl. (Dkt. 1)

¶¶ 60-65.  *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of

action will not do.").  The only factual allegations pertaining to Klasfeld and *The Messenger*

pertain to the publication of *The Messenger* Article, but the law is clear that "reporting on a

newsworthy story constitutes justification [against a tortious interference claim] as a matter of

law." *Trump v. Trump*, 79 Misc. 3d 866, 884, 189 N.Y.S.3d 430 (Sup. Ct. N.Y. Cnty. 2023)

(collecting cases).

Fredin's conspiracy to tortiously interfere claim fails together with his meritless tortious

interference claim.  *See Goldman*, 2017 WL 4334011, at *7-8.  Dismissal is also required

because Fredin has failed to plausibly plead the elements of a conspiracy.  *See* 7-8, *supra*.

## IV.   FREDIN FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Finally, Fredin has failed to state an intentional infliction of emotional distress claim

against *The Messenger* and Klasfeld.  Such claims "fail[] as a matter of law" when they are

"duplicative of [the plaintiff's] defamation cause of action"—and Fredin's claims against

Klasfeld and *The Messenger* are duplicative because they arise out of the publication of the same

statement that serves as the basis for his meritless defamation claims.  *Holland v. Lions Gate Ent.*

*Corp.*, 2022 WL 6770060, at \*4 (S.D.N.Y. Oct. 11, 2022).  Fredin's claim also fails because he does not plausibly plead the sort of "extreme or outrageous" conduct required to state an intentional infliction of emotional distress claim.  It is "long settled that publication of a single, purportedly false or defamatory article regarding a person does not constitute extreme and outrageous conduct *as a matter of law*."  *Bement v. N.Y.P. Holdings*, 307 A.D.2d 86, 92 (1st Dep't 2003) (emphasis added); *Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996) (article alleging plaintiff was a murderer and worked on behalf of secret police was not extreme or outrageous conduct), *aff'd*, 119 F.3d 189 (2d Cir. 1997).[10]

### CONCLUSION

For the foregoing reasons, Klasfeld and *The Messenger* respectfully request that this Court dismiss the claims in the Complaint against them with prejudice and award such other relief the Court deems just and proper.

Dated this 10th day of May, 2024

GODFREY & KAHN, S.C.

By: *s/Brian C. Spahn*
    Brian C. Spahn
    State Bar No. 1060080
    Maxted Lenz
    State Bar No. 1104692

    Attorneys for Defendants JAF Communications,
    Inc. and Adam Klasfeld

P.O. ADDRESS:
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: 414-273-3500
Fax: 414-273-5198

---

[10] *See also Harp v. Glock*, 2019 WL 1859258, at \*8 (E.D. Wis. Apr. 25, 2019) (dismissing intentional infliction of emotional distress claims because broadcast of true crime television show "certainly cannot constitute the kind of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress").

bspahn@gklaw.com
mlenz@gklaw.com

31190896.1