UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN WISCONSIN

| | |
|---|---|
| BROCK FREDIN,<br><br>                Plaintiff,<br><br>--against--<br><br>ADAM KLASFELD,<br>JAF COMMUNICATIONS, INC., d/b/a<br>"THE MESSENGER",<br>ALLISON GREENFIELD,<br>FRANK RUNYEON,<br><br>                Defendants. | Case No. 24-CV-45<br><br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW<br>IN OPPOSITION TO DEFENDANTS<br>MOTION TO DISMISS** |

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, submits this memorandum of law in opposition to Defendants Motion to Dismiss.

## INTRODUCTION

As set forth herein, Defendant's Motion to Dismiss Counts 1 through 5 of the Complaint should be denied. Plaintiff has plausibly alleged facts to support claims for defamation (Count 1), conspiracy to defame (Count 2), tortious interference (Count 3), conspiracy to tortiously interfere (Count 4), and intentional infliction of emotional distress (Count 5) in the Complaint as discussed more fully below.

As an initial matter, Defendant's memorandum of law in support of their Motion to Dismiss is replete with material misrepresentations, distortions of the facts and assertions that are simply not pertinent to the Motion to Dismiss. Plaintiff must set the record straight as a result. Defendants attempts to paper over their flagrant violation of court rules are outrageous and disturbing. Rather, as the Complaint sets forth in detail, Defendant Greenfield, a Democrat operative, has exploited

1

her role in the New York Unified Court System to engage in professional misconduct and help issue unconstitutional gag orders, aiming to hide ongoing ethical violations in *People v. Trump*.

This course of behavior is evident by the fact that nowhere in their Motion to Dismiss does Defendant Greenfield even attempt to deny or raise a defense to the assertion that she maliciously defamed Plaintiff. Indeed, Defendant Greenfield would like for this Court to believe that this matter begins and ends with the December 14, 2023, article ("Article") written by Defendant Klasfield. What Defendant Greenfield would prefer the Court to overlook is that she has repeatedly donated to Democrat candidates, blatantly violating New York Court rules that impose a $500 annual donation limit on court staff. Furthermore, when Plaintiff discovered her donation history and reported the activities, Defendant Greenfield responded by attacking Plaintiff and unlawfully leaking court information to Defendant Klasfield. This was in violation of New York Court rules, which mandate that any information from the Manhattan Supreme Court must be publicly reported by the official court reporter. Defendant Klasfeld not only assisted Defendant Greenfield in breaching court rules by helping leak information in retaliation against Plaintiff, but also diligently worked to hide his affair by consistently defending Defendant Greenfield to thwart Freedom of Information Law requests. His actions were focused on maintaining his access to court gossip and breaking case information, ensuring his standing remained favorable with the New York Unified Court System. At most, Plaintiff authored several posts on X and created a website where he documented the letter motions sent to Justice Arthur Engoron, requesting protection of his First Amendment rights in relation to the gag order issued by Defendant Greenfield through Justice Engoron. Moreover, Defendants overlook the fact that Defendant Runyeon assisted Defendant Klasfeld misrepresent Defendant Greenfield's egregious ethical

breaches.  They posted on X attacking Plaintiff and falsely described these actions as mere expenses for tickets, rather than acknowledging them as donations to Democrat clubs.

As the Complaint details, Defendant Greenfield helped issued a gag order in *People v. Trump* for the collateral and illegitimate purpose of attempting to silence Plaintiff and as a means of thwarting his ability to exercise his right to report on her unethical court activities.  Defendants colluded to publish an Article in The Messenger that attacked Plaintiff and made several posts on X aimed at defaming Plaintiff, all in an effort to downplay Defendant Greenfield's misconduct.

What makes Defendants conduct all the more unconscionable and outrageous, however, is the actual content of their Article and X posts.  Defendants Article and posts targeting Plaintiff were not simply limited to petty name-calling.  Rather, Defendants posted and ostensibly endorsed completely false assertions that Plaintiff had physically "attacked and targeted women" that "echoes of the attacks on the judge's clerk" as well as that Plaintiff "openly threatened other courtroom clerks whose judges [issued unfavorable decisions]."  (*See* Complaint ¶ 37.)  These assertions were accompanied by unrelated postings containing other personal information about Plaintiff, including comments from third parties on X describing physical assaults on him, and photographs that Defendants engineered by attempting to have Plaintiff arrested on false charges.  Without question, Defendant's behavior of knowingly posting false allegations targeting Plaintiff was plainly outrageous and crossed the line of civility and decency.  In fact, as a result of Defendants malicious campaign to disparage and defame Plaintiff, Plaintiff lost his job and has had difficulty securing permanent employment as a computer programmer.

As a result, Plaintiff respectfully requests that this Court dismiss the Motion to Dismiss in its entirety for the reasons set forth more fully below.

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts, when accepted as true, that state a facially plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations must be sufficient to "raise a right to relief" in order to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Harris v. Kashi Sales*, LLC, 609 F. Supp. 3d 633, 638 (N.D. Ill. 2022). "The Court accepts as true all of the plaintiff's well-pleaded allegations and draws all reasonable inferences in the light most favorable to the plaintiff." *See Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020).

Federal courts sitting in diversity apply the choice of law rules of the forum state, and under choice-of-law rules, the forum state's law applies unless an actual conflict is shown or the parties agree that forum law doesn't apply. *Paulsen v. Abbott Labs.*, 39 F.4th 473 (7th Cir. 2022). The "Court should give substantial weight in favor of the forum in which the plaintiff chose to file the complaint." *Moore v. HUB Grp.*, 23-cv-2720-JPG, 6 (S.D. Ill. Jan. 11, 2024) (holding that selected forum state's substantive law applies in light of public policy); *See also In re Nat'l Presto Indus.*, 347 F.3d 662, 663-64 (7th Cir. 2003). The movant has the burden of establishing that the transfer is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen v. Barrack*, 376 U.S. 612, at 622 (1964)).

"It would seem that Rule 12(b)(6) is not the appropriate procedural rule to invoke in seeking dismissal of claims based on a … forum-selection." *Contract Servs. Grp. v. E&E Mfg. of Tenn.*, 2:22-CV-66-JPK, 10 (N.D. Ind. Mar. 29, 2023). *See, e.g., Lawson Steel, Inc. v. All State Diversified Prods.*, Inc., No. 1:10-cv-1750, 2010 WL 5147905, at *5 (N.D. Ohio Nov. 23, 2010) (holding that Rule 12(b)(6) "is not an appropriate mechanism for challenging venue" because,

among other things, "the underlying purpose of Rule 12(b)(6), on its face," is to require that a plaintiff plead sufficient facts to support a claim for relief, whereas "[t]he underlying purpose of challenging venue ... is entirely different").

## STATEMENT OF FACTS

Plaintiff incorporates by reference the facts as alleged in the Complaint.

## ARGUMENT

As set forth herein, Defendants Motion to Dismiss the Complaint should be denied in its entirety. First and foremost, Plaintiff has alleged sufficient facts to support his claims of defamation (Count 1), conspiracy to defame (Count 2), tortious interference (Count 3), conspiracy to tortiously interfere (Count 4), and intentional infliction of emotional distress ("IIED") (Count 5). Plaintiff has properly asserted sufficient facts to establish a claim of defamation, demonstrating that Defendants knowingly made false statements, which were disseminated to millions through their publications, resulting in harm to Plaintiff. Defendants falsely accused Plaintiff of physically "attacking and targeting women," which they claimed "echoe[d] the attacks on the judge's clerk," and also of "openly threaten[ing] other courtroom clerks." Plaintiff has additionally alleged facts supporting a claim for conspiracy to defame, where Defendants are claimed to have made an agreement to unlawfully defame Plaintiff by publishing knowingly false material. Each party involved purportedly intended to defame Plaintiff, resulting in significant harm to Plaintiff. Furthermore, Plaintiff has presented facts to support a claim of tortious interference. Plaintiff had a prospective contractual relationship with his employer. Defendants interfered with that relationship by intentionally acting to terminate his employment.

Additionally, Plaintiff has alleged facts supporting a claim for conspiracy to tortiously interfere, asserting that Defendants agreed to unlawfully interfere with Plaintiff's relationship with his employer. Each party involved intended to disrupt this relationship, resulting in substantial harm to Plaintiff. Plaintiff has further alleged facts to support a claim for intentional infliction of emotional distress where Defendants falsely accused Plaintiff of physically "attacking women" in a public and persistent internet forum. Moreover, Plaintiff has alleged facts supporting an IIED claim, where Defendants publicly and persistently accused Plaintiff of physically "attacking women" on an internet forum.

  I.  <u>Plaintiff's Claims Were Filed Under Wisconsin Law in This Forum and Are Not Subject to New York Choice of Law Provisions</u>

Defendants Motion to Dismiss Plaintiff's claims should be denied. In federal courts, including those in Wisconsin, the choice of law rules to apply in a case involving state law claims are determined by the state law of the forum in which the federal court is located. This is based on the doctrine established by the Supreme Court case *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). According to this doctrine, federal courts sitting in diversity (where the parties are from different states) must apply the substantive law of the state in which they sit, including the state's choice of law rules.

Wisconsin follows the "most significant relationship" test for determining the applicable law in tort cases. *Bakery Bling v. Matrix Packaging Mach.*, No. 21-CV-1399-JPS (E.D. Wis. Nov. 28, 2022). This approach is outlined in the Restatement (Second) of Conflict of Laws. It considers factors such as the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile of the parties, and the place where the relationship between the parties is centered. According to choice-of-law principles, "the law of the state with the most significant relationship to the occurrence and the parties' applies in the event of a conflict." *Old Republic*

6

*Gen. Ins. Co. v. Amerisure Ins. Co.*, 20 C 992, 8 (N.D. Ill. Sep. 25, 2023) (internal citations omitted).

Here, the Complaint alleges facts to satisfy the injury occurred in Wisconsin. *Conklin v. Horner*, 38 Wis. 2d 468, 157 N.W.2d 579 (Wis. 1968) (applying Wisconsin law when the injury occurred in Wisconsin and the lawsuit was filed in Wisconsin). The injury occurred over the internet in Wisconsin, where Plaintiff was domiciled, and despite Defendants being domiciled in New York, the place causing the injury was in Wisconsin. (*See* Def. Greenfield. MTD. ¶ 9.) Defendant Greenfield is a government employee who was employed as a Principal Court Attorney for the New York Unified Court System. Defendant Greenfield emailed Plaintiff in Wisconsin and employed leaks to target Plaintiff and other residents in Wisconsin. Moreover, the underlying case has significant implications for the former President of the United States and the Presidential Election in Wisconsin, further emphasizing Wisconsin as the center of the relationship. This is especially true given that the Republican Convention is being held in Milwaukee, where the *People v. Trump* case will have a substantial impact on attendees. This includes a gag order issued by Defendant Greenfield through Justice Engoron, which could significantly influence the experiences of those attending. (*See* Complaint ¶ 20.)

Defendants initiated their smear campaign by exploiting Defendant Greenfield's privileged court position, launching internet attacks targeting Wisconsin with their Article and X posts. (*See Id*.) This was done to defend Defendant Greenfield's unethical conduct. (*See Id*.) Many of the knowingly false claims likely originated from Wisconsin residents, including Air Force Major Grace Miller and Assistant United States Attorney Lindsey Middlecamp, both of whom grew up

in Wisconsin and maintain part-time residency by visiting their parents for extended periods.[1] It is probable that these two women are sources for Defendant Klasfeld.

Defendant Greenfield disputes the Court's jurisdiction, invoking principles of personal jurisdiction, the application of long-arm statutes, general personal jurisdiction under long-arm statutes, insufficient contacts as outlined in Wis. Stat. § 801.05(3), traditional notions of fair play under the Due Process Clause, and other jurisdictional criteria not being met. (*See* Greenfield MTD. ¶ 7-14.) These arguments are ineffective because the Defendants' activities significantly affect Wisconsin and were conducted over the internet within the state. *Wildey v. Springs*, 47 F.3d 1475 (7th Cir. 1995) (applying the most significant relationship test related to plaintiff where other jurisdictional contact test arguments are raised); *Palmer v. Beverly Enterprises*, 823 F.2d 1105 (7th Cir. 1987) (finding plaintiffs employment state favored application of that forum's law).

While Defendant Greenfield may claim she has never visited Wisconsin, or that she does not have "minimum contacts", this does not diminish the impact of her actions, such as leaking information targeting Plaintiff to justify a gag order, or to block FOIL requests that would be reviewed in Wisconsin, which impact Plaintiff and other Wisconsin residents attending the Republican National Convention. The effects of Plaintiff's reporting on Defendant Greenfield's conduct could be significant for these individuals. Her actions could impede the ability of

---

[1] Over the past ten years, AUSA Middlecamp and Major Miller have conspired to initiate nearly thirty cases against Plaintiff as part of their lawfare campaign. No one else, except President Trump, has experienced this level of legal warfare. It is hoped that in 2025 they will be held accountable and face prosecution for their misconduct. This includes accepting an illegal million-dollar kickback by exploiting Major Miller's Air Force position and access to the US Senate through Brigadier General Jay N. Selanders and his law firm, Kutak Rock, to fund their litigation efforts. Major Miller abused her authority to recommend state court judges, such as Jeffrey Bryan, for nominations to the federal bench in exchange for issuing gag orders on behalf of herself and AUSA Middlecamp.

convention speakers to freely exercise their First Amendment rights to criticize both Justice Engoron and Defendant Greenfield herself. (*See* Def. Greenfield. MTD. ¶ 9.)

In this case, Defendant Greenfield disputes Plaintiff's choice of law and jurisdiction, arguing that she did not provide services in Wisconsin that resulted in a "financial benefit." (*See Id.* ¶ 12.) Defendant asserts that she has not engaged in any "solicitation" of business activities or services in Wisconsin. (*See Id.* ¶ 11.) Furthermore, there is no business relationship between Plaintiff and Defendant Greenfield. *Drinkwater v. American Family Mutual Ins. Co.*, 290 Wis. 2d 642, 2006 WI 56, 714 N.W.2d 568 (Wis. 2006) ("absent a contractual clause" defining choice of law, "Wisconsin law would apply.") Defendants cannot validly claim a lack of jurisdiction over causing Plaintiff's injury in Wisconsin, nor over the rights of listeners at the Republican National Convention in Milwaukee to engage in First Amendment activities. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969) (right to hear and receive information). These rights were potentially interfered with due to Defendant Greenfield's targeting of speakers and listeners through the gag order she issued via Justice Engoron related to Plaintiff's reporting and her retaliatory leaks. *Kleindienst v. Mandel*, 408 U.S. 753 (1972) (First Amendment interest of U.S. citizens to receive foreign information and ideas, noting the importance of the listeners' rights to access diverse viewpoints).

    II.    <u>Plaintiff Has Plead Facts to State a Claim for Defamation, Conspiracy to Defame, Tortious Interference, Conspiracy to Tortiously Interfere, and Intentional Infliction of Emotional Distress</u>

Defendants Motion to Dismiss Plaintiff's claims should be denied. As described below, Plaintiff has presented enough factual allegations to establish a basis for relief.

    A.  <u>Plaintiff Has Plead Facts to State a Claim for Defamation *Per Se*</u>

Defendants Motion to Dismiss Plaintiff's defamation claims should be denied. Under Wisconsin law, three elements are necessary to sustain a claim for defamation: (1) a false

9

statement; (2) that is communicated by speech, by conduct, or in writing to a person other than the person defamed; and (3) which is unprivileged and tends to harm one's reputation so as to lower the person in the estimation of the community or to deter third persons from associating or dealing with the person. *Sidoff v. Merry*, No. 2022AP1871, 5 (Wis. Ct. App. Aug. 3, 2023); *See also Scoll & Remeika, LLC v. Fueger*, No. 2021AP772 (Wis. Ct. App. Apr. 7, 2022); *Pronger v. O'Dell*, 127 Wis. 2d 292 (Ct. App. 1985).

Here, Defendant Klasfeld and The Messenger made several knowing false statements:

- "harassment of women that echoes his attacks on Greenfield"
- "He has attacked the targeted women in their professional circles"
- "[which] echoes of the attacks on the judge's clerk"
- "created harassing websites about them"
- "targeting Greenfield, Fredin openly threatened other courtroom clerks whose judges ruled in favor of one of his victims"
- "share videos attacking people connected to his cases"
- "Fredin has filed retaliatory lawsuits"
- "appear to mirror his actions toward Greenfield"
- "Fredin did not answer multiple phone calls to the phone number that he listed in court records, and he did not respond to email inquiries by the time of publication"
- "This pattern continues with Trump's trial"

(*See* Complaint ¶ 10.) These statements were transmitted over the internet to millions of people in Wisconsin through the Article in question. The false statements were deliberately made to harm Plaintiff. The "statement" central to a defamation case does not need to be a direct assertion; it can also be an implication. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). Defendant Klasfeld and The Messenger's "defamatory statements accused Plaintiff of committing a serious crime, i.e. criminally harassing or attacking a public official rather than criticizing the public official for misconduct, and are therefore defamatory *per se*." (*See* Complaint ¶ 13.) Plaintiff, functioning as a citizen journalist, did not "rise to prominence" as Defendant Klasfeld suggested, but was rather conducting routine investigations into judicial

misconduct. (*See* Klasfeld MTD ¶ 16.) In his role, Plaintiff issued critical statements about Defendant Greenfield and Justice Engoron. "A citizen who criticizes a public official is shielded by the Speech and Press Clauses." *McDonald v. Smith*, 472 U.S. 479, 489 (1985). "It is as much his *duty* to criticize as it is the official's duty to administer." *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) (emphasis added). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison* v. *Louisiana*, 379 U.S. 64, 75 (1964).

Anti-SLAAP

Wisconsin does not recognize anti-SLAPP laws. The anti-SLAAP "right is [therefore] unknown under Wisconsin law." *State Farm Life Ins. v. Pyare Square Corp.*, 112 Wis. 2d 65, 69 (Wis. Ct. App. 1983). Defendants argue that New York's anti-SLAPP laws should apply. (*See* Klasfeld MTD ¶ 4, 9, 15.) However, this does not override the choice of law standard that selects Wisconsin law as applicable in this forum. *Wilcox v. Wilcox*, 26 Wis. 2d 617, 133 N.W.2d 408 (Wis. 1965) (holding "the law of the forum should presumptively apply.").

Fair and Accurate Report

In their Motion to Dismiss, Defendant Klasfeld and The Messenger contend that their statements were a "fair and accurate report of judicial proceedings." (*See* Klasfeld MTD ¶ 14.) Although their coverage of judicial proceedings involving Plaintiff was not directly connected to *People v. Trump*, Defendant Klasfeld and The Messenger insinuated that Plaintiff physically "attacked" women and "openly threatened clerks." (*See* Complaint ¶ 10.) Plaintiff has never physically attacked or threatened anyone. These allegations are simply inaccurate. It appears that Defendant Klasfeld may have sourced these false allegations from several women, potentially including AUSA Lindsey Middlecamp and her partner, Major Grace Miller. At one point, Plaintiff respectfully requested the name of a clerk for historical society purposes from the Minnesota Court

11

of Appeals, a court that his family had a hand in establishing.[2]  At no point during that interaction did he "openly threaten clerks." (*See Id*.)  Previously, these two women confessed to "fabricating the most believable false information" to target Plaintiff.  Indeed, if it is true that Defendant Klasfeld obtained these statements from AUSA Middlecamp and Major Miller, the credibility and accuracy of the information would be completely undermined.  Moreover, Defendant Klasfeld did not accurately present a screenshot of any pleading in which Plaintiff requested the name of the clerk to support his knowingly false claim that Plaintiff "attacked women" and "openly threatened clerks."  (*See* Complaint ¶ 10.) Similarly, Defendant Klasfeld fails to provide any evidence whatsoever that Plaintiff would physically "attack and target" anyone because plaintiff is an avowed pacifist who has never been in a physical confrontation in his life.  "The [fair report] privilege can be lost if the report is inaccurate or unfair, where the 'account is discolored or garbled,' or where comments or insinuations are added." *Butler v. Hogshead-Makar*, 21 C 6854, 19-20 (N.D. Ill. Jul. 20, 2023) (internal citations omitted).

In his article, Defendant Klasfeld does not specify the methodology behind his findings.  Instead, he uses vague and conclusory descriptions of how he reviewed pleadings, many of which are sealed.  The sealed nature of many pleadings, linked to the security clearances granted to AUSA Middlecamp and Major Miller, makes it highly unlikely that the source material originated from anyone other than these two women.  Plaintiff's @JudicialProtest account aims to provide sharp and snappy commentary on judicial misconduct, a risky field for citizen journalists given the significant power wielded by judges and their staff, such as Defendant Greenfield.  While the statements issued by Plaintiff through @JudicialProtest may be considered harsh, they are essential

---

[2] *See* Footnote 16 e.g.,
https://open.mitchellhamline.edu/cgi/viewcontent.cgi?article=1313&context=wmlr

for exposing the severe misconduct in courts that often remains unreported, due to a long history of corrupt judiciaries retaliating against journalists to hide wrongdoing. Plaintiff's snappy commentary and statements cannot reasonably be described as physical "attacks" or "open threats against clerks," as Defendant Klasfeld has claimed in his publication. (*See* Complaint ¶ 10.)

Defendant Klasfeld, acting on behalf of Defendant Greenfield, likely harbored malice towards Plaintiff and sought retaliation by having him arrested for his citizen journalism, which exposed Defendant Greenfield's misconduct. The "showing of common law malice would defeat any privilege attaching to the fair and accurate reporting of public proceedings." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000); *See* also *Global Relief Foundation v. New York Times Company*, No. 01 C 8821 (N.D. Ill. Sep. 9, 2002) (defeating fair report privilege). The "fair report privilege is forfeited if the report is not a fair and accurate report of the proceeding." *Dawson v. New York Life Ins. Co.*, 932 F. Supp. 1509 (N.D. Ill. 1996). *Tunney v. American Broadcasting Co.*, 109 Ill.App.3d 769, 775, 65 Ill.Dec. 294, 298, 441 N.E.2d 86, 90 (1st Dist. 1982) ("The privilege is lost … if the report of the proceeding is inaccurate.").

Actual Malice

Defendant Klasfeld and The Messenger state that Plaintiff is a "limited purpose public figure." (*See* Klasfeld MTD ¶ 15.) Although Plaintiff denies being a public figure, he felt compelled to report on the misconduct of Defendant Greenfield and Justice Engoron due to his unique position as the only person on the planet with evidence of their wrongdoing.

As outlined in the Complaint, Defendant Greenfield previously emailed Plaintiff in Wisconsin, inviting him to attend court hearings related to contempt proceedings. (*See* Complaint ¶ 3.) These proceedings addressed Justice Engoron's apparent indifference towards the actions of self-proclaimed celebrity divorce attorney Robert Wallack, who misappropriated nearly half a

13

million dollars from his landlord. (*See Id*.) This situation does not adequately categorize Plaintiff as a "limited public figure" for the purposes of applying an actual malice standard. A "private individual does not have the same degree of access to the media to rebut defamatory comments as does the public person and he has not voluntarily exposed himself to public scrutiny." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 363 (1974) (Brennan dissenting). Plaintiff's "injection" was primarily motivated by his desire to attend a contempt hearing concerning Mr. Wallack.

In his Article, Defendant Klasfeld "intentionally avoided interviewing" key witnesses who Defendants thought would challenge their deceptive story. This demonstrates knowingly "reckless disregard" for the truth, thereby showing actual malice. *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 109 S. Ct. 2678 (1989). Defendant Klasfeld and The Messener "purposely" engaged in an "incomplete investigation." (*See Id.*)

### B. Plaintiff Has Plead Facts to State a Claim for Conspiracy to Defame

Defendant's Motion to Dismiss Plaintiff's conspiracy to defame must be denied. In Wisconsin, a civil conspiracy is defined "as a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Maleki v. Fine-Lando Clinic*, 162 Wis. 2d 73, 86 (Wis. 1991) (internal citations omitted). "In civil conspiracy, the essence of the action is the damages that arise out of the conspiracy, not the conspiracy itself." (*See Id.*) "To prove a conspiracy, a plaintiff must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." (*See Id.*) "If there is a combination of persons and they act, even in part as the result of malicious motives and cause the harm, the injury to another is actionable." (*See Id.*) Defendants encouraged the plan to injure Plaintiff by agreeing to act together to attack Plaintiff. *Winslow v. Brown*, 125 Wis. 2d 327 (Wis. Ct. App. 1985). Defendants

"committed acts in furtherance of the conspiracy." *Segall v. Hurwitz*, 114 Wis. 2d 471, 480 (Wis. Ct. App. 1983) (stating that each member of a conspiracy is liable for the actions undertaken by others within the conspiracy). Defendant Klasfeld and Runyeon's presence in the courtroom during *People v. Trump* additionally corroborates Plaintiff's claims asserted in this action that each Defendant were engaged in a conspiracy to inflict harm on Plaintiff. The four acted in furtherance of this conspiracy by launching a defamation campaign on Defendant Klasfeld and Runyeon's X accounts spear-headed by Defendant Greenfield, which repeatedly referenced the false statements published in the Article at issue in this proceeding. Additionally, Defendants Klasfeld and Runyeon contributed to this conspiracy by consistently defending Defendant Greenfield's excessive donations, which violated New York Judicial Conduct rules, and by publishing an Article that supported the same behavior. These actions constitute defamation and a conspiracy. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (holding that "each [person] is jointly liable for his or her co-conspirators' acts in furtherance of the conspiracy"). Consequently, Plaintiff requests that the Court grant the conspiracy claim.

### C. Plaintiff Has Plead Facts to State a Claim for Tortious Interference

Defendant's Motion to Dismiss Plaintiff's tortious interference must be denied. Under Wisconsin law, five elements are necessary to sustain a claim for tortious interference: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere. *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wisconsin, S.C.*, 2005 WI App 217, 287 Wis. 2d 560, 574, 706 N.W.2d 667, 675 (*citing Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir.1994).)

The article by Defendant Klasfeld and Messenger, along with their subsequent posts on X, effectively served as a letter written in bad faith that led to Plaintiff's termination. *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) (holding that the defendant's "communications were intentional misrepresentations under Wisconsin law, which suffices to establish 'intentional and allegedly tortious conduct'"). This conduct satisfies the five conditions of Plaintiff's tortious interference claims. (*See* Complaint ¶ 14.) This is especially likely considering they might have contacted Plaintiff's employer as sources. Plaintiff was contacted on or around December 14, 2023, and given a two-week notice of termination as part of a conspiracy involving Defendant Greenfield. Defendants acted in "bad faith" to intentionally target Plaintiff's employment. *Wolf v. F & M Banks*, 534 N.W.2d 877 (Wis. App. 1995).

### D. Plaintiff Has Plead Facts to State a Claim for Conspiracy for Tortious Interference

Defendant's Motion to Dismiss Plaintiff's conspiracy for tortious interference must be denied. Defendants conspired with "two or more persons." *Maleki v. Fine-Lando Clinic*, 162 Wis. 2d 73, 86 (Wis. 1991) (internal citations omitted) (satisfying the elements of conspiracy). If it is true that Defendant Klasfeld and Messenger were part of the conspiracy with Defendants Greenfield and Runyeon to target Plaintiff's contractual relationship with his employer, all Defendants would be liable for the extrajudicial acts of their co-conspirators. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (holding that "each [person] is jointly liable for his or her co-conspirators' acts in furtherance of the conspiracy"); *See* also *Segall v. Hurwitz*, 114 Wis. 2d 471, 480 (Wis. Ct. App. 1983).

### E. Plaintiff Has Plead Facts to State a Claim for Intentional Infliction of Emotional Distress

Defendants Motion to Dismiss Plaintiff's IIED must be denied. Under Wisconsin law, four elements are necessary to sustain a claim for intentional infliction of emotional distress: (1) the

16

defendant's conduct was intentional, that is, the defendant behaved as she did for the purpose of causing emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the injury; and (4) the plaintiff suffered an extreme and disabling emotional response to the conduct. *Doe v. Saftig*, 09-C-1176, 2011 WL 1792967 (E.D. Wis. May 11, 2011) (citing *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963)). *Rabideau v. City of Racine*, 243 Wis. 2d 486, 627 N.W.2d 795 (Wis. 2001).

In their moving papers, Defendants assert that they did not engage in "extreme or outrageous" conduct and therefore Plaintiff's IIED claim must be dismissed. (*See* Klasfeld & Runyeon MTD ¶ 24; 20.) The Complaint alleges that Defendants publicly published and continues to maintain on the internet an Article and X posts falsely accusing Plaintiff of physically "attacking and targeting women" and "openly threaten[ing] other courtroom clerks whose judges." (*See* Complaint ¶ 37.) Defendants cite no analogous cases to support their contention that these false allegations are not "extreme and outrageous conduct." Indeed, several courts throughout the United States have held that a false allegation of this nature is sufficiently "extreme and outrageous" conduct to support a claim for IIED. *Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49, 771 N.Y.S.2d 16 [2004] (falsely accusing various restaurants of causing his wife's physical injury in order to elicit their responses sufficient to support an IIED claim); *See* also *Holloway v. Am. Media, Inc.*, 947 F. Supp. 2d 1252 (N.D. Ala. 2013) (holding that a publication that "published at least three articles that were knowingly false and which were intended by defendants to cause plaintiff to suffer severe emotional distress" is sufficient to plead an IIED claim).

Defendants further claim that Plaintiff's IIED claim should be dismissed because his claims are "duplicative because they arise out of the publication of the same statement that serves as the basis for his meritless defamation claims." (*See* Klasfeld & Runyeon MTD ¶ 23; 20.) Defendants

17

assert that "it is long settled that publication of a single, purportedly false or defamatory article regarding a person does not constitute extreme and outrageous conduct as a matter of law." (*See Id.* ¶ 24.) Defendants description of the Complaint is not accurate. The Complaint explicitly states that Defendants have repeatedly published unique and original content on X as well as in The Messenger. (*See* Complaint ¶ 8; Ex. C.) Moreover, Defendants publication was maliciously used to try and arrest Plaintiff. This is especially clear in how the headline of their article implied that Plaintiff was under "investigation." *Andersen v. Village of Glenview*, 2018 WL 6192171, at *21 (N.D. Ill. 2018) (denying a motion to dismiss an IIED claim where plaintiff alleged that the defendant "engaged in a campaign to have her falsely arrested and prosecuted so that she would lose custody over her children."). Defendants fail to refute that Plaintiff has suffered mental anguish as a result of Defendants unlawful conduct. Defendants characterization of the Complaint is inaccurate. In the Complaint, Plaintiff specifically alleges that he has suffered and continues to "suffer severe and extreme emotional distress." (*See* Complaint ¶ 16.) Where Plaintiff has plead the necessary element of the claim, this is where the extent and symptoms of his "severe and extreme emotional distress" meet the requisite levels of severity and is a question of fact of the jury. *Doe v. Saftig*, 09-C-1176, 2011 WL 1792967 (E.D. Wis. May 11, 2011); *See, e.g., Holder v. Ivanjack*, 39 F.Supp.2d 965, 969-70 (N.D. Ill. 1999) (holding that police officers' filing of false criminal charges can underpin an IIED claim); *Prakash v. Parulekar*, 177 N.E.3d 1, 16-17 (Ill. App. 2020) (holding that a professor's false statements were sufficient to state an IIED claim); *Brown v. Kouretsos*, No. 15-C-11076 (N.D. Ill. Jun. 15, 2016) (holding that a principal's false accusation stated an IIED claim).

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that Defendants Motion to Dismiss be denied in its entirety.

Dated: June 8, 2024

s/ Brock Fredin
Brock Fredin
2163 US Highway 8, Suite 100
Saint Croix Falls, WI 54024
(612) 424-5512 (tel.)
brockfredin@icloud.com
Plaintiff, *pro se*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2024, I filed the foregoing with the Clerk of Court through the CM/ECF system which will automatically send electronic mail notifications of such filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List.

All Defendants and Attorneys for Defendants

Dated: June 10, 2024

                                                                                                                            s/ Brock Fredin
                                                              Brock Fredin
                                                              2163 US Highway 8, Suite 100
                                                              Saint Croix Falls, WI 54024
                                                              (612) 424-5512 (tel.)
                                                              brockfredin@icloud.com
                                                              Plaintiff, *pro se*